UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MOISES METEVIER and NELSON ROSARIO,

                         Plaintiffs,

                       - against -

CARR PROPERTIES, INC., CARR PROPERTIES CH 1, INC., and BEN ASAMOAH,

                         Defendants.

**OPINION AND ORDER**

15 Civ. 3039 (ER)

Ramos, D.J.:

      Moises Metevier ("Metevier") and Nelson Rosario ("Rosario") (collectively "Plaintiffs") bring this action against CARR Properties, Inc. ("CARR"), CARR Properties CH 1, Inc. ("CARR CH 1"), and Ben Asamoah ("Asamoah") (collectively "Defendants"), alleging wage violations under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). Complaint ("Compl."), Doc. 1, ¶¶ 1–2. Presently before the Court is Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(a). Doc. 10. Defendants assert that Plaintiffs' FLSA claims for unpaid wages are barred by *res judicata*, and that Plaintiffs are collaterally estopped from arguing that they were employees covered under the FLSA, as opposed to independent contractors. Defendants further claim that in dismissing Plaintiffs' FLSA claims for unpaid wages, the Court should decline to exercise supplemental jurisdiction over Plaintiffs' NYLL wage violation claims. Defs.' Mem. at 16–17. For the reasons set forth below, Defendants' motion is DENIED.

I.      FACTUAL BACKGROUND

Defendant CARR CH 1 owns and operates as residential rental units the property located at 25-29 West Tremont Avenue, Bronx, New York (the "Property"), and, according to Plaintiffs, Defendant CARR manages the Property. Defendants' Statement Pursuant to Local Rule 56.1 ("Defs.' 56.1"), Doc. 14, ¶ 3; Compl. ¶ 16. Plaintiffs allege that Defendant Asamoah is a principal of both CARR CH1 and CARR. Compl. ¶ 19.

Plaintiff Metevier was hired as a non-resident janitor at the Property from January 2012 to March 2012. *Id.* ¶ 6. Metevier was subsequently hired as a resident janitor at the Property from March 2012 to December 2013. Defs.' 56.1 ¶ 2. According to Plaintiffs, Metevier's negotiated wage rate as resident janitor was $392 per week, and his duties included "making minor repairs [to the Property]; removing garbage, refuse, ashes, and waste from the premises; and removing snow, ice, and dirt from the sidewalk and gutter." Compl. ¶¶ 24, 31. Furthermore, Plaintiffs allege that Metevier's established working hours were Monday to Saturday, 8:00 a.m. to 5:00 p.m., but that at least twice per week he worked outside of his regular working hours. *Id.* ¶¶ 28–29.

In March 2012, Defendant Asamoah and Metevier agreed that Metevier would renovate certain apartments and studios on the Property. Defs.' 56.1 ¶ 4. In July 2012, Plaintiff Rosario was hired to help Metevier complete the renovation work. *Id.* ¶ 12. All of the parties understood that Plaintiffs would be paid five thousand dollars for each renovated apartment and two thousand dollars for each renovated studio, and that Plaintiffs would receive payment once all of the units had been renovated. *Id.* ¶¶ 4, 6. It is undisputed that Plaintiffs completed renovation work in eight apartments and four studios. *Id.* ¶ 13.

2

Plaintiffs claim that Metevier performed renovation work in the property from March 2012 to December 2013 for a minimum of thirty-five hours per week, in addition to the hours he worked as a resident janitor, totaling a minimum of eighty hours per week.  Compl. ¶¶ 79–80.  Plaintiffs claim that Rosario performed renovation work in the property from July 2012 to December 2013 for a minimum of twenty-four hours per week.  *Id.* ¶¶ 83–84.  According to Plaintiffs, the renovation work performed included, but was not limited to, knocking down, reinstalling, and plastering walls; installing sheet rock; painting; removing and installing flooring, sinks, and bathtubs; and installing cabinets.  *Id.* ¶ 54.

On February 3, 2014, Hollis V. Pfitsch ("Pfitsch"), a lawyer for the Legal Aid Society, filed a claim for unpaid wages and retaliation on Metevier's behalf with the New York State Department of Labor, Division of Labor Standards ("DOL").  Declaration of David P. Stich, filed in support of Defendants' motion for summary judgment ("Stich Decl."), Doc. 13–3, Ex. C at 13–15; *see also* Doc. 13–9, Ex. C at 35-36.  A signed two-page affidavit was attached to the claim, in which Metevier stated that Asamoah failed to pay Metevier and other workers $48,000 for the completed renovation work, and that Metevier paid these other workers $17,380 out-of-pocket.  *See* Doc. 13–3, Ex. C at 14–15.  The affidavit alleged that Metevier was fired from Defendants' employ in late December 2013 after requesting payment totaling $37,000 from Asamoah ($19,620 for Metevier's completed renovation work and $17,380 for unreimbursed out-of-pocket payments).  *See id.* at 15.

On April 9, 2014, the DOL notified Metevier that it had received his claim and found that there was sufficient evidence to move forward with an investigation.  Stich Decl., Doc. 13–9, Ex. C at 15.  In a letter dated June 17, 2014, the DOL informed Metevier that it had investigated his claims, and that a "compliance conference" was scheduled for July 18, 2014 to determine what

3

further action was needed to resolve the case.  *See* Stich Decl., Doc. 13–9, Ex. C at 18.  That same day, the DOL mailed a letter to Asamoah notifying him of the conference.  The letter also informed him that the DOL's investigation indicated that he may be in violation of New York labor law, and that prior to taking further action, such as by initiating a legal proceeding, "it is Department policy to attempt to achieve compliance and reach an amicable resolution by holding a compliance conference."  *Id.* at 28.  The DOL requested that both parties provide proof of wages paid, employment contracts, and any other supporting documentation.  *Id*.  Asamoah, Metevier, and their respective counsel all attended the conference, which was presided over by Labor Standards Investigator Michelle Melendez ("Melendez").  *See* Stich Decl., Doc. 13–5, Ex. C at 3–4; Doc. 13–9 at 23.  On July 24, 2014, Melendez issued a "Final Report," stating that "no resolution was reached" at the conference.  Stich Decl., Doc. 13–9, Ex. C at 2.

At some point thereafter, Senior Labor Standards Investigator Hope V. Martinez ("Martinez") sent Metevier a letter informing him that based on the DOL's investigation, it had concluded that he performed the renovation work as an independent contractor, finding that Metevier himself understood his agreement with Asamoah to complete the renovations to be separate from his employment as a janitor.  Stich Decl., Doc. 13–4, Ex. C at 10–11, 18–19.[1]  The DOL also determined that it could not "substantiate [Metevier's] claim of retaliation . . . and found [the] claim to be invalid," because Metevier sought compensation from Asamoah in December 2013, after he had already been discharged in November 2013.  *See id.*  Consequently, The DOL held that it would "take no further action regarding monies alleged to be owed to [Metevier] for renovation work performed."  *Id.* at 11.  The DOL informed Metevier that he may "consider taking his own legal action to recover payments for his contracting work", and concluded that it could not "be of any further assistance in [the] matter."  *Id*.  On December 19,

---

[1] The letter is not dated.  *See* Stich Decl., Doc. 13–4, Ex. C at 18–19.

2016, Martinez sent Metevier another letter, restating the DOL's finding that Metevier did not have an employee/employer relationship with CARR with respect to the renovation work. Stich Decl., Doc. 13–4, Ex. C at 17, Defs.' 56.1 ¶ 20.

On January 6, 2014, the DOL sent a letter to Asamoah indicating that the DOL would not be taking any further action with regard to Metevier's claim. Stich Decl., Doc. 13–3, Ex. C at 3. On January 7, 2015, the DOL issued a "Final Report," signed by Martinez, stating that no outstanding wages were due to Metevier, that Metevier did not complete the renovations as an employee of CARR, and that none of Metevier's claims were sustained. *Id.* at 2.

## II.     PROCEDURAL BACKGROUND

Plaintiffs commenced the instant action on April 20, 2015, alleging that Defendants willfully and intentionally violated the FLSA and NYLL minimum wage and overtime wage requirements, and were liable to Plaintiffs on the grounds of breach of contract, unjust enrichment, quantum meruit, breach of covenant of good faith and fair dealing, promissory estoppel, and fraud. Compl. ¶¶ 98–166. On June 13, 2015, Defendants answered the Complaint denying Plaintiffs' allegations, and filed two counterclaims on the grounds that Plaintiffs created illegal apartments within Metevier's basement apartment in the property, and had sublet those apartments without Defendants' permission. Answer, Doc. 5, ¶¶ 171–172, 180. Plaintiffs answered Defendants counterclaims on July 6, 2015. Doc. 7.

On August 27, 2015, this Court granted Defendants' leave to file a motion to dismiss. However, Defendants filed a motion for summary judgment instead. Doc. 10. Because Plaintiff's have not objected to Defendants' filing of a motion for summary judgment, the Court will decide the motion as one for summary judgment.

5

### III. LEGAL STANDARD

#### A. Summary Judgment Standard

To prevail on summary judgment, the movant must show that the admissible evidence and pleadings leave "no genuine dispute as to any material fact." Fed. R. Civ. P. ("FRCP") 56(a). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)). "A 'material' fact is one that might 'affect the outcome of the suit under the governing law.'" *Id.* "The function of the district court in considering the motion for summary judgment is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010).

The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where "the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim." *Cordiano v. Metacon Gun Club, Inc.*, 575 F.3d 199, 204 (2d Cir. 2009) (citing *Celotex*, 477 U.S. at 322–23). If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008) (citing *Celotex*, 477 U.S. at 322–23).

In deciding a motion for summary judgment, the Court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all

reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (citing *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004)). "When, as in this case, both sides move for summary judgment, the district court is 'required to assess each motion on its own merits and to view the evidence in the light most favorable to the party opposing the motion, drawing all reasonable inferences in favor of that party.'" *Asberry v. Hartford Life & Acc. Ins. Co.*, No. 14 Civ. 69 (JMF), 2015 WL 857883, at *3 (S.D.N.Y. Feb. 27, 2015) (quoting *Wachovia Bank, Nat'l Ass'n v. VCG Special Opportunities Master Fund, Ltd.*, 661 F.3d 164, 171 (2d Cir. 2011)). Thus, "neither side is barred from asserting that there are issues of fact, sufficient to prevent the entry of judgment, as a matter of law, against it." *Heublein, Inc. v. United States,* 996 F.2d 1455, 1461 (2d Cir. 1993).

### IV. DISCUSSION

Defendants contend that Plaintiffs' claims are barred by *res judicata* and collateral estoppel. *See* Memorandum of Law in Support of Defendants' motion for summary judgment ("Defs.' Memo."), Doc. 11, at 8. According to Defendants, the DOL made a final determination that Metevier was an independent contractor, and thus was not entitled to unpaid wages. *See* Defs.' Mem. at 9. Defendants claim that Metevier is thus precluded from bringing the same claim for unpaid wages before this Court. *Id*. Defendants assert that their *res judicata* and collateral estoppel arguments also apply to Rosario, because Metevier and Rosario were in privity with each other. *See* Reply Memorandum of Law of Defendants ("Defs.' Rep. Mem."), Doc. 19, at 8. Defendants claim that privity should be found, because Metevier's interests in the proceeding before the DOL mirror Rosario's interests in the instant action. *Id*. Consequently, Defendants argue that Plaintiffs' only source of relief is to initiate an Article 78 proceeding to appeal the DOL's final determination. *See* Defs.' Mem. at 12. In the alternative, Defendants

7

argue that the Court should find on the current record that Plaintiffs acted as independent contractors. *See* Defs.' Mem. at 16. Defendants further request that the Court decline to exercise supplemental jurisdiction over Plaintiffs' NYLL claims if it chooses to dismiss Plaintiffs' FLSA claims. *See* Defs.' Mem. at 16–17.

### A. Collateral Estoppel[2]

"The doctrine of collateral estoppel, a narrower species of *res judicata,* precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party or those in privity, whether or not the tribunals or causes of action are the same." *Ryan v. New York Tel. Co.*, 62 N.Y.2d 494, 500 (1984). Under New York law, collateral estoppel is invoked when (1) an issue is identified in the present action "which has necessarily been decided in the prior action and is decisive of the present action" and (2) "there was a full and fair opportunity to contest the decision now said to be controlling." *Bland v. New York*, 263 F. Supp. 2d 526, 551 (E.D.N.Y. 2003) (quoting *Schwartz v. Public Administrator of Bronx. Co.,* 24 N.Y.2d 65, 71 (1969)).

The Court notes that collateral estoppel is "a flexible doctrine [that] should not be mechanically applied just because some of its formal prerequisites, like identity of parties, identity of issues, a final and valid prior judgment and a full and fair opportunity to litigate the

---

[2] The Supreme Court has held that "when a state agency acting in a judicial capacity . . . resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts." *Univ. of Tennessee v. Elliott*, 478 U.S. 788, 799 (1986). It is unclear, however, whether judicially unreviewed decisions of state agencies under the FLSA should be given preclusive effect in federal courts. *See Solimino v. Astoria Fed. Sav. & Loan Ass'n*, 901 F.2d 1148, 1151 (2d Cir. 1990) (noting that there is no indication in either the FLSA or its interpretive caselaw that Congress intended in the FLSA to give preclusive effect to the judicially unreviewed fact-finding of a state administrative agency); *see also Argento v. Sylvania Lighting Servs. Corp.*, 127 F. Supp. 3d 1060 (D. Ariz. 2015); *Jones v. Hamic*, 875 F. Supp. 2d 1334, 1340 (M.D. Ala. 2012). The Southern District has not squarely addressed this issue, however the Court in *Akwesi v. Uptown Lube & C/W, Inc*., suggested that "while unreviewed factual determinations of state agencies may be given preclusive effect in federal court, this is not so in all circumstances, and appears not [to] [sic] be so in suits brought under the FLSA." No. 07 CIV. 335 (NRB), 2007 WL 4326732, at *3 (S.D.N.Y. Dec. 3, 2007). Because the Court finds that collateral estoppel and res judicata do not apply in this case, the Court need not decide whether Plaintiffs' claim would have otherwise been precluded.

prior determination, may be present". *Jeffreys v. Griffin*, 1 N.Y.3d 34, 41 (2003). In applying "collateral estoppel with respect to administrative determinations, the burden rests upon the proponent of collateral estoppel to demonstrate the identicality and decisiveness of the issue, while the burden rests upon the opponent to establish the absence of a full and fair opportunity to litigate the issue in [the] prior action or proceeding." *Bland*, 263 F. Supp. 2d at 552 (quoting *Ryan*, 62 N.Y.2d at 501).

### i. Issue Identity

With regards to identification and identicality of the issue, "the issue must have been material to the first action or proceeding and essential to the decision rendered therein . . . and it must be the point actually to be determined in the second action or proceeding such that a different judgment in the second would destroy or impair the rights or interests established in the first." *Linares v. City of White Plains*, 773 F. Supp. 559, 563 (S.D.N.Y. 1991) (internal quotations omitted) (quoting *Ryan*, 62 N.Y.2d at 501).

The central issue in the present action is whether Plaintiffs are considered "employees" under the FLSA and NYLL, and thus covered by the statutes, as opposed to "independent contractors" who are not. The DOL did make a determination on this issue after Metevier submitted a claim of retaliation and unpaid wages for completed renovation work on Defendants' property. *See* Stich Decl., Doc. 13–3, Ex.C at 13. Specifically, the DOL concluded that Metevier did not have an employee/employer relationship with Defendants with respect to the renovation work. *See* Stich Decl., Doc. 13–4, Ex.C at 10. Instead, the DOL found that the circumstances surrounding Metevier's claim indicated that he was an independent contractor. *Id*.

Because the question of Metevier's employment status was material to the DOL's decision, and is the same question that must be determined in the present action, the Court concludes that Defendants have met their burden of demonstrating issue identity.

### ii. Full and Fair Opportunity to Litigate

Under New York Law, there is no formulaic test for determining whether a litigant had a full and fair opportunity to litigate in a prior proceeding. To the contrary, the analysis is fluid, rooted in fairness, and turns on the specific facts and characteristics of each case. *See Pack v. Artuz*, 348 F. Supp. 2d 63, 75 (S.D.N.Y. 2004). "The basic concern is one of fairness," and "in testing the fairness of the earlier litigation, all circumstances must be evaluated. *Id.* (internal citations omitted).

In relation to unreviewed state administrative decisions, collateral estoppel only applies if the agency functioned in a quasi-judicial capacity and employed procedures substantially similar to those used in a court of law. *See Bland*, 263 F. Supp. at 552; *see also Linares*, 773 F. Supp. at 564 ("[A] state administrative decision which is unreviewed by a state court carries no preclusive effect if it was not the subject of a 'quasi-judicial' proceeding.").

Defendants contend that the DOL "has the authority to act in an adjudicative manner with respect to wage, hour, overtime, and related disputes," and that the DOL's compliance conference was a quasi-judicial proceeding that meets the standard set out by the New York Court of Appeals in *Allied Chemical v. Niagara Mohawk Power Corp.,* 72 N.Y.2d 271 (1988). *See* Defs.' Mem. at 10. According to *Allied*, an agency's administrative proceeding is quasi-judicial in character if (1) the agency has statutory adjudicative authority, (2) the procedures used during the administrative proceeding were sufficient both quantitatively and qualitatively to adequately test the factual assertions and permit a fair airing of the issues, (3) the parties to the

administrative proceeding expected to be bound by its results, and (4) the agency's scheme of administration supports a need for flexibility and the ability to modify prior decisions. *Allied*, 72 N.Y.2d at 276–77.

Defendants argue that the compliance conference conducted by the DOL was sufficient both qualitatively and quantitatively to be considered an adjudicatory proceeding under *Allied*. *See* Defs.' Mem. at 10–11. They note that the DOL investigated Metevier's claims, and gave Metevier the opportunity to submit evidence and witness names for interviews in support thereof. *See* Defs.' Mem. at 11-12. Furthermore, Metevier was represented by a lawyer at the compliance conference. *Id*. Also, Defendants assert that Metevier expected that the parties would be bound by the agency's results, because he initiated the claim before the department and fully participated in the proceeding. *See* Defs.' Mem. at 11–12. Finally, Defendants refer to the "Final Report" issued by the DOL dated January 7, 2015, which they assert represents the agency's final determination of the matter. *See* Defs.' Mem. at 6.

The Court finds Defendants' arguments unavailing. A compliance conference is merely a precursor to an "Order to Comply," which the DOL may choose to issue against an employer at the conclusion of its investigation. N.Y. Labor Law § 663(3); *see, e.g. Ovadia v. Office of Indus. Bd. of Appeals*, 19 N.Y.3d 138, 142 (2012); *Kronin v. State*, 127 A.D.2d 479, 480 (First Dep't 1987). If the employer disputes the Order, only then does a formal hearing take place before the Industrial Board of Appeals (the "Board"). 12 NYCRR § 66.1. The hearing is conducted by a Board member or a "hearing officer," who has a duty to, *inter alia*, administer oaths, take affidavits, and issue subpoenas. *Id.* §§ 65.22, 65.28. During the hearing, witnesses are examined orally under oath and opposing parties have a right to cross-examination. *Id.* § 65.31.

Ultimately, the Board's decision "contain[s] findings of fact and law," and is based on a majority vote. *Id.* § 65.39

In contrast a compliance conference is "a stage in the enforcement process," and "an extension of the investigation." *Rosquist v. New York Univ. Med. Ctr.*, No. 97 CIV. 8566 (JGK), 1998 WL 702295, at *13 (S.D.N.Y. Oct. 7, 1998). "The hearings are designed to be 'informal' and conducive to helping parties settle their differences." *Id.* Indeed, the conference notice to Asamoah expressly stated that the purpose of the meeting was to "achieve compliance and reach an amicable resolution" before the DOL chose to take further action, such as by initiating a legal proceeding. *See* Stich Decl., Doc. 13–9, Ex. C at 28. Moreover, in a Final Report issued six days after the compliance conference, the presiding investigator concluded that "no resolution was reached," further indicating that the conference was not quasi-judicial, but an attempt to facilitate settlement and further investigate Metevier's claims. *Id.* at 2. Under New York law, "administrative determinations are given preclusive effect *only* if the agency is acting in an adjudicatory, *as opposed to an investigatory capacity* . . . [and] employ[s] procedures substantially similar to those used in a court of law." *Henry v. Concord Limousine, Inc.*, No. 13 Civ. 0494 (JS) (WDW), 2014 WL 297303, at *8 (E.D.N.Y. Jan. 24, 2014) (internal citation omitted) (second emphasis added).

The record demonstrates that the procedures used in the compliance conference were not substantially similar to those used in a court of law. Metevier and Asamoah, on behalf of Defendants, were instructed to bring supporting documentation to the conference, and Metevier concedes that he was questioned by DOL representatives during the conference while represented by counsel. *See* Stich Decl., Doc. 13–9, Ex.C at 18-19.; Affidavit of Moises Metevier, filed in opposition of Defendants' motion for summary judgment ("Metevier Aff."),

Doc. 16, ¶¶ 9–11; Defs.' Rep. Mem at 4.  Still, there is no evidence that the parties had an opportunity to engage in discovery, present testimony under oath, examine and cross-examine witnesses, or issue subpoenas.[3]  Furthermore, the compliance conference was presided over by an investigator, as opposed to a hearing officer or administrative law judge.  And after the DOL concluded its investigation, a senior investigator notified Metevier by stating that the DOL could not "be of any further assistance in [the] matter," and recommended that Metevier "consider taking his own legal action to recover payments for his contracting work."  Stich Decl., Doc. 13–4, Ex. C at 11.

Thus, while Defendants may be correct that the DOL ultimately made a final determination with regard to Metevier's claims, the totality of the circumstances make clear that Metevier did not have a full and fair opportunity to litigate his claims in a quasi-judicial proceeding.  The compliance conference was more akin to a settlement conference, as opposed to a hearing.  *Cf. Ryan*, 62 N.Y.2d at 505 (concluding that a plaintiff had a full and fair opportunity to litigate after participating in a hearing that was presided over by a federal Administrative Law Judge, and which allowed the plaintiff to testify and cross-examine the defendant's witnesses).

### B.  Res Judicata

"Under both New York law and federal law, the doctrine of *res judicata,* or claim preclusion, provides that "[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Maharaj*

---

[3] Metevier's sworn statement alleges that Asamoah appeared at the conference with a witness, but Metevier's counsel was not given the opportunity to question the witness. *See* Metevier Aff. ¶¶ 8, 15.  Some cases have suggested that the inability to cross-examine witnesses, the exclusion of witness testimony, and a departure from traditional rules of evidence may not be dispositive in determining whether to give preclusive effect to the unreviewed decisions of state administrative agencies.  However, these cases are distinguishable in that the parties presented detailed documentary exhibits, closing statements, and filed rebuttal evidence; the parties testified under oath; and generally the procedures permitted a fair airing of the issues.  *See Ward v. Harte*, 794 F. Supp. 109, 114 (S.D.N.Y. 1992); *Harper v. Nat'l Kidney Found., Inc.*, No. 03 Civ. 6247L, 2005 WL 43774 (W.D.N.Y. Jan. 10, 2005).  None of those procedures were employed here.

*v. Bankamerica Corp.,* 128 F.3d 94, 97 (2d Cir. 1997) (quoting *Federated Dep't Stores, Inc. v. Moitie,* 452 U.S. 394, 398 (1981)). "As a general rule, once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy." *Parker v. Blauvelt Volunteer Fire Co.*, 93 N.Y.2d 343, 347 (1999) (internal quotations omitted) (quoting *O'Brien v. City of Syracuse*, 54 N.Y.2d 353, 357); *Matter of Reilly v. Reid*, 407 N.Y.S.2d 645 (1978). As described above, the DOL compliance conference was not adjudicatory or quasi-judicial in nature, and therefore the investigation of Metevier's claim of retaliation and unpaid wages did not result in an adjudication on the merits. Consequently, *res judicata* does not apply.

### C. Article 78

Defendants' claim that because the DOL made a final determination, Plaintiffs' sole remedy is to appeal pursuant to CPLR Article 78. Defendants refer to 12 NYCRR § 701.13, which states that "[a]ppeals from decisions shall be pursuant to CPLR Article 78." However, this rule applies only to decisions made in "adjudicatory proceedings held by the Commissioner of Labor." 12 NYCRR § 701.1.[4] There is no evidence that Metevier participated in an adjudicatory proceeding, which in any event would have been held by the Industrial Board of Appeals. *See* 12 NYCRR § 66.1; *Ovadia*, 19 N.Y.3d at 142; *Am. Broad. Companies, Inc. v. Roberts*, 61 N.Y.2d 244, 246–47 (1984); *Kronin*, 127 A.D.2d at 480.

Rather, as described above, the record makes clear that the DOL made its determination only after conducting an investigation. Article 19 of the NYLL, which governs Plaintiffs' claims for unpaid wages and overtime, expressly states that "[i]nvestigation by the commissioner [of

---

[4] Such proceedings are presided over by a "hearing officer," 12 NYCRR. § 701.3, and are characterized by, *inter alia*, (1) the respondent filing an answer in writing; (2) testimony under oath; (3) the presentation of written and oral evidence; (4) examination and cross examination of the parties and their witnesses; and (5) the issuance of subpoenas. *See id.* § 701.5, 701.6, 701.9.

labor] shall not be a prerequisite to nor a bar against a person bringing a civil action under this article." N.Y. Lab. Law § 663(3).  Plaintiffs, in fact, are not required under either the NYLL or FLSA to exhaust their administrative remedies before bringing claims for unpaid wages and overtime.  *Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 358 (E.D.N.Y. 2015); *Grochowski v. Ajet Const. Corp.*, No. 97 Civ. 6269 (NRB), 2000 WL 1159640, at *3 (S.D.N.Y. Aug. 16, 2000), *aff'd sub nom. Grochowski v. Phoenix Const.*, 318 F.3d 80 (2d Cir. 2003).  Therefore, Defendants' argument that Plaintiffs' sole remedy is to appeal pursuant to Article 78 fails as a matter of law.

### D.  Employee vs. Independent Contractor

Defendants assert that even if Plaintiffs' claims are not precluded, the record demonstrates that Metevier and Rosario were independent contractors, not employees under the FLSA and NYLL.  In accordance with the remedial purposes of the Act, the FLSA "defines 'employee' broadly as any individual employed by an employer.  29 U.S.C. § 203(e)(1)." *Godoy v. Rest. Opportunity Ctr. of New York, Inc.*, 615 F. Supp. 2d 186, 192 (S.D.N.Y. 2009).  Under the FLSA's 'economic reality' standard courts generally apply a five-factor test intended to distinguish employees from independent contractors.  *Id.*  These five factors include: "(1) the degree of control exercised by the employer over the workers, (2) the workers' opportunity for profit or loss and their investment in the business, (3) the degree of skill and independent initiative required to perform the work, (4) the permanence or duration of the working relationship, and (5) the extent to which the work is an integral part of the employer's business."  *Id.*

"The existence and degree of each factor is a question of fact while the legal conclusion to be drawn from those facts – whether workers are employees or independent contractors – is a question of law."  *Kinney v. Artist & Brand Agency LLC*, No. 13 Civ. 8864 (LAK) (DF), 2015

WL 10714080, at *11 (S.D.N.Y. Nov. 25, 2015).  Furthermore, no individual factor is dispositive or exclusive, rather the factors should be analyzed flexibly in light of the totality of the circumstances.  *Id.*  In considering this question under the NYLL, District Courts in this Circuit "have consistently interpreted the definition of 'employer' . . . coextensively with the definition used by the FLSA."  *Garcia v. JonJon Deli Grocery Corp.*, No. 13 Civ. 8835, 2015 WL 4940107, at *3 (S.D.N.Y. Aug. 11, 2015).[5]

Defendants claim that Plaintiffs' allegations in the Complaint conclusively indicate that Plaintiffs were acting as independent contractors when they completed the apartment renovations.  Defs.' Mem. at 13–14.  With respect to the element of control, Defendants point to allegations that Metevier was the one who ordered supplies for the renovations.  Compl. ¶¶ 44–45.  With respect to the workers' opportunity for profit and loss, and their investment in the business, Defendants claim that the agreed payment was a per apartment fixed fee, as opposed to an hourly amount.[6]  Defs.' Mem. at 13.  Furthermore, because Plaintiffs allege that Metevier paid for other workers out of his own pocket, Compl. ¶ 87, Defendants assert that Metevier had control over how much profit he made, Defs.' Mem. at 13–14, and over the timing of the project, given that it took eighteen months, which Defendants claim shows a degree of independent initiative, *id.* at 14.  Defendants also claim that the project was limited in scope, because it consisted of a fixed number of apartments.  Finally, Defendants claim the renovation was not integral to Defendants' business, which consists of the ownership of property for rent.  *Id.*

---

[5] Under New York law, courts must evaluate: "whether the worker (1) worked at his own convenience, (2) was free to engage in other employment, (3) received fringe benefits, (4) was on the employer's payroll and (5) was on a fixed schedule."  *Kinney*, 2015 WL 10714080, at *12.

[6] Defendants do not cite to the Complaint in making this claim.  *See* Defs.' Mem. at 13.  However, Plaintiffs acknowledge that they were instructed that "all wages would be paid on the task basis without regard to hours worked."  Compl. ¶ 51.

Plaintiffs, however, make a number of allegations that suggest they were acting as employees of Defendants. It is undisputed that Metevier was on Defendants' payroll for his work as a superintendent, and that Defendants offered to pay Metevier additional wages for doing major repair work on apartments in need of renovation. *See* Compl. ¶¶ 31, 38, 41; Metevier Aff., Doc. 16–1, Ex. E at 19–24. Plaintiffs allege that Defendants visited the apartments, discussed the repairs, and inspected the work performed. *Id.* ¶¶ 43, 66. Plaintiffs allege that Defendants instructed Plaintiffs to perform particular jobs with respect to the renovations, including, *inter alia*, reinstalling walls, installing cabinets, and painting the apartments. *Id.* ¶ 54. Plaintiffs claim that Defendants paid for the supplies that were ordered by Metevier, and instructed Metevier to hire additional workers. *Id.* ¶¶ 45, 49. Plaintiffs also allege that Rosario, in addition to other employees, were hired by Defendant to work on the renovations with Metevier. Plaintiffs allege that Defendants provided them with a deadline by which they were required to complete the work. *Id.* ¶ 65. Plaintiffs also contend that the renovations were in fact integral to Defendants' business, which as property owners, was to maintain and rent apartments. Pls.' Mem. at 11.

These allegations are sufficient to raise material issues of fact regarding the nature of the relationship between Plaintiffs and Defendants. Because the allegations in the Complaint[7] do not demonstrate as a matter of law that Plaintiffs acted as independent contractors, the Court cannot grant Defendants' motion for summary judgment.

---

[7] Because this motion was filed shortly after the Complaint was filed (and was initially to be a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6)), no discovery has taken place.

## V. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is DENIED. The Clerk of the Court is respectfully directed to terminate the motion, Doc. 10. The Parties are directed to appear for a status conference on **October 18, 2016 at 11:30 AM**.

It is SO ORDERED.


Dated:   September 30, 2016
         New York, New York

                                                    _____
                                                    Edgardo Ramos, U.S.D.J.